**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Rigoberto Martinez Arias,<br>Petitioner<br>-vs-<br>Luis Rosa, Jr., et al.,<br>Respondents. | CV-26-5730-PHX-JFM<br><br>**Order** |

Under consideration is Petitioner's Petition for Writ of Habeas Corpus filed August 14, 2026 (Doc. 1).

**<u>Background</u>** – Petitioner is a citizen and national of Honduras, born in 1968, who is married to a Lawful Permanent Resident and has U.S. citizen children and step-children, and has lived in the United States for a total of some 30 years since 1987.

He entered the United States without inspection in 1987, and remained until August 21, 1996, when he was ordered deported *in absentia* while using the alias “Elixandro Guiterres.”

On May 20, 2015 he was granted Temporary Protected Status, and was granted advance parole into the United States pursuant to INA § 244, 8 U.S.C. § 1254a. On that basis he was allowed back into the United States on January 30, 2016. His parole was to expire on January 29, 2017. He was, nonetheless, charged at the time with being removable as an inadmissible alien.

On November 10, 2021 Petitioner filed an Application to Register for Permanent Residence or Adjust Status. On January 6, 2024, Petitioner was granted an employment Authorization, and Temporary Protected Status, valid through July 5, 2025.

On April 9, 2026 he was issued a Notice to Appear for an initial interview on his Application to Register. On May 13, 2026, a Warrant of Arrest and Notice to Appear was

issued charging Petitioner with being inadmissible. On May 30, 2026 Petitioner appeared at the USCIS for his interview, and was instead arrested and detained.

On June 2, 2026, Petitioner was charged with being removable, as an inadmissible alien having overstayed his parole. The Notice to Appear failed to allege Petitioner's alienage, and despite being given time by the IJ to do so, DHS failed to make supplemental allegations and on June 30, 2026 the IJ determined the Notice to Appear was deficient and terminated the proceedings. No appeal was taken.

Despite the absence of ongoing removal proceedings, Petitioner remained detained.

On July 10, 2026 Petitioner was charged with being removable as an alien present without admission or parole. On July 20, 2026 Additional Charges of Inadmissibility were filed identifying Petitioner as an arriving alien having overstayed his parole. On August 11. 2026 his removal proceedings were dismissed at the request of DHS. Petitioner has appealed the dismissal to the Board of Immigration Appeals. Despite the dismissal, Petitioner has remained in custody.

Petitioner has not been provided a bond determination

**Briefs** – On August 14, 2026 Petitioner filed through counsel the **Petition** (Doc. 1). Petitioner argues that: (1) he is being illegally detained pursuant to 8 U.S.C. § 1225(b) because he is already in the country, citing *Rodriguez Vazquez v. Bostock*183 F.4th 1160, 1193 (9th Cir. 2026); (2) his Fifth Amendment Due Process rights have been violated by the denial of an individualized bond determination; (3) his warrantless arrest was a violation of the statutes and regulations; and (4) he is being unlawfully detained despite the termination of his removal proceedings. Petitioner seeks release or a bond hearing.

On August 21, 2026 Respondents filed a Response (Doc. 9) simply asserting removal proceedings were ongoing, but they did not oppose a bond hearing.

On the same date, Petitioner filed his Reply (Doc. 10) reporting his transfer outside the District of Arizona, and that he was entitled to an adjudication in this District and under the law of the Ninth Circuit and injunction against removal, and release from detention.

On September 3, 2026, Respondents filed a Supplemental Response (doc. 12)

acknowledging this Court's ongoing jurisdiction, pointing to the standard order limiting removal without notice, and acknowledging the applicability of Ninth Circuit precedent. Respondents argue their previous acknowledgment that Petitioner was entitled to a bond hearing § 1226(a) was erroneous but they would nonetheless stand by the non-opposition.

Petitioner has not replied further, and his time to do so expired September 6, 2026.

**<u>Petitioner's Detention Is Under § 1225(b)</u>** – Detention of aliens in removal proceedings is governed by either 8 U.S.C. § 1226 or 8 U.S.C. § 1225(b). As recently summarized in *Rodriguez Vazquez v. Bostock*, "unadmitted aliens entering the United States at the border [are subject] to § 1225(b)(2)(A), and unadmitted aliens present in the interior of the country [are subject] to § 1226." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1193 (9th Cir. 2026).

Here, Petitioner was, most recently (in 2016), paroled into the country as an immigrant seeking admission pursuant to INA § 244, 8 U.S.C. § 1254a. On the basis of that parole, Petitioner has remained physically within the United States.

It would be reasonable for a layman to assume the status of being "present in the interior of the United States" extends to anyone not physically standing at the border, or detained in an immigration lockup awaiting admission or removal. But that proposition was rejected long ago. In *Leng May Ma v. Barber*, 357 U.S. 185 (1958) the Court addressed the status of an alien paroled into the country pending determination of her admissibility.

> It is important to note at the outset that our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'

*Id.* at 187 (citations omitted). The Court addressed the status of the two different groups.

> For over a half century this Court has held that the detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically within the United States. It seems quite clear that an alien so confined would not be 'within the United States' for purposes of s 243(h)…Our question

> is whether the granting of temporary parole somehow effects a change in the alien's legal status. In s 212(d)(5) of the Act [8 U.S.C. § 1182(d)(5)]…the Congress specifically provided that parole 'shall not be regarded as an admission of the alien,' and that after the return to custody the alien's case 'shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'

*Ma*, 357 U.S. at 188. Nothing *Rodriguez Vazquez* altered that principle. Although Petitioner physically entered, he has not effected a legally cognizable entry. Rather, under the "entry fiction" doctrine, "although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1097 (9th Cir. 2004).

This principle was recently affirmed by the Ninth Circuit in *Padilla v. U.S. Immigr. & Customs Enf't,* No. 24-2801, slip op. at 25–27 (9th Cir. Sept. 21, 2026) (concluding that "entry fiction," and the corresponding denial of constitutional protections, applies only to aliens entering illegally if detained proximate to their place and time of entry).

Like the parole in *Ma* under 8 U.S.C. § 1182(d)(5), TPS parole under § 1254a does not alter an immigrant's legal status to being admitted. Except with regard to the requirements of specific provisions, "[t]he TPS program gives foreign nationals nonimmigrant status, but it does not admit them." *Sanchez v. Mayorkas*, 593 U.S. 409, 414 (2021). *See* 8 U.S.C. § 1254a(f)(4) ("for purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant"). Although Petitioner's removal proceedings may have been frozen by the grant of TPS status, that freeze ceased when the parole term ended. At that point, Petitioner remained an alien seeking admission.

<u>**Termination of Parole Not Determinative**</u> – It is true that Petitioner's most recent TPS parole expired in 2025. But that did not render him free from the constraints of his parole. In *Siu Fung Luk v. Rosenberg*, 409 F.2d 555, 558 (9th Cir. 1969) the Ninth Circuit

held that the mere termination of an alien's parole without immediate action by officials to remove him did not terminate the entry fiction.

**Termination of Removal Proceedings** – It is true that removal proceedings against Petitioner were terminated on June 30, 2026. If Petitioner had been free from detention at that time, the Court might construe his continuing presence to amount to effecting a legally cognizable entry. But he was not. Thus, on the basis of that dismissal, it cannot be said that Petitioner has ever effected a legally cognizable entry into the country.

**Due Process Rights Limited to Statute** - Having determined that Petitioner has not, since his arrival and parole in 2016 (renewed in 2024), effected a legally cognizable entry, the Court must conclude that Petitioner has no constitutional rights to release.

In *Shaughnessy v. United States ex rel. Mezei*, the petitioning alien had (after a period of residence) left the United States and spent more than 18 months "behind the iron curtain" before attempting to return to the U.S. The Court found he was not challenging his exclusion, just his continued detention on Ellis Island because other countries would not take him. 345 U.S. 206, 207 (1953). The *Mezei* Court observed that while aliens who had already "passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in the due process of law...But an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry to the country is concerned.'" *Mezei*, 345 U.S. at 212 (quoting *U.S. ex rel Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). The Court went on to determine Mezei could be detained indefinitely on Ellis Island, concluding that Mezei was not deprived of "any statutory or constitutional right." 345 U.S. at 215-216.

This limitation on the rights of aliens on the threshold of entry has been repeatedly recognized since 1953. *See Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 138 (2020) ("as to 'foreigners who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law,' 'the decisions of executive or administrative officers, acting within powers expressly

conferred by Congress, are due process of law"); *Zadvydas v. Davis*, 533 U.S. 678, 693-694 (2001) (finding constitutional limitation on post-removal order detention for in country aliens and distinguishing *Mezei* as an "arriving alien" deemed "stopped at the border"); *Xi v. U.S. I.N.S.*, 298 F.3d 832, 837 (9th Cir. 2002) (recognizing *Mezei* describes due process rights of arriving aliens regarding detention, but finding *Zadvydas*'s constitutional construction of statute governing post-removal order detention to apply to all post-removal order aliens, including arriving aliens); and *Padilla v. U.S. Immigr. & Customs Enf't,* No. 24-2801, slip op. at 25–27 (9th Cir. Sept. 21, 2026) (recognizing limited constitutional rights of aliens governed by entry fiction doctrine, but refusing to extend the fiction to an alien detained within two years of entry).

Accordingly, Petitioner's detention is governed by 8 U.S.C. § 1225, and his only opportunity for release is discretionary humanitarian release under 8 U.S.C. § 1182(d)(5). Petitioner does not suggest he has been granted such release.

**<u>Consent to Bond Hearing</u>** – Despite the foregoing, Respondents have stipulated that Petitioner be given a bond hearing. (Response, Doc. 9 at 1; Supp. Response, Doc. 12 at 1.) Accordingly, the Court will grant the Petition as provided herein.

**IT IS THEREFORE ORDERED:**

(A) Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**

(B) Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED IN PART** as specified herein.

(C) Within **seven days** of the filing of this Order, Respondents must provide Petitioner a **BOND DETERMINATION HEARING** pursuant to 8 U.S.C. § 1226(a) or release Petitioner from custody under the same conditions that existed before Petitioner's detention. Petitioner—including any counsel—must be given at least two days' notice of the bond hearing.

(D) Such bond hearing must be conducted under the **LAW APPLICABLE IN THE NINTH CIRCUIT**.

(E) If Petitioner requests a continuance of such bond hearing from the Immigration Court,

Respondents must promptly notify the Court and provide the continued date for the bond hearing.

(F) Respondents must provide a **NOTICE OF COMPLIANCE** within **three days** of releasing Petitioner or providing Petitioner a bond hearing, specifying the results of the hearing or particulars of the release.

(G) Any pending motions are **DENIED AS MOOT**.

(H) The Clerk of Court must enter **JUDGMENT** in Petitioner's favor and **CLOSE** this case.

Dated: September 25, 2026

26-5730-001o Order 26 09 22 on Petition for Writ of Habeas Corpus.docx

James F. Metcalf
United States Magistrate Judge